## MORRISON vs. GALLOWAY.

APPEAL from *Washington* county court. This was an action of *covenant*, brought by the appellant in the late general court on the 11th of February 1799, upon the following *articles of agreement* entered into between him and the defendant, (now appellee.) "Articles of agreement made this 18th of March 1796, between *William Morrison* of," &c. "and *Benjamin Galloway* of," &c. "Whereas it is the intention of the said *Galloway* that a complete merchant mill shall be erected at a seat on *Chew's Farm*, in *Washington* county, and said *Morrison* is willing to exe-

1809.
DECEMBER.

Morrison
vs
Galloway

In an action of covenant, brought on the 11th of February 1799, upon an agreement executed on the 18th of March 1796, between M (the plaintiff,) and G (the defendant,) stipulating *inter alia* that a complete merchant mill should be built by M of materials to be provided by G, who was

also to provide a framed or hewed logged dwelling-house at the mill for M to reside in, and M agreed that he would take up his residence at the mill in the dwelling house, and would act as the manager and superintendant of the mill, which was to be worked for the joint benefit of M and G, in equal parts, M to receive one half of the nett profits, and G the other half. The copartnership to commence as soon as the mill should be ready to do work, and continue for ten years. That a regular set of books should be kept, which should contain all the transactions of the copartnership, and a settlement should be effected at the end of every year. The firewood should be furnished from the farm on which G resided, for the use of two fire places in the mill and dwelling house, at the equal cost of the parties for cutting and hauling it to the houses; and 12 acres of land, including two acres of bottom land most convenient to M, to be put under good and sufficient fence for his use. The declaration averred, that the mill was completed on the 21st of June 1798, and that M performed, &c. The breach assigned was, that G did, on the 31st of January 1799, forcibly eject M from the mill and premises, and still keeps him out. That G did not provide a framed or hewed logged dwelling-house at the mill for M to reside in. That G, on the dry and year last aforesaid, after the mill was complete and put into complete motion, did prevent M from receiving one half of the nett profits of the mill, but that G did, contrary to the consent of M, receive the whole of the profits from the day and year last aforesaid, until the bringing of this action, and hath refused to pay any part thereof to M. Nor did G furnish M with 12 acres of land, including two acres of bottom land most convenient to M, under good and sufficient fence for M's use. The witness to the agreement was offered by G to prove what took place between G and M previous to and at the time of the agreement, as to their intention and meaning in the agreement; also another witness, who proved that when he was at work upon the dam for the mill, he received orders from G to build the dwelling-house for M, but that M told him to continue to work at the dam, and not to mind the house, as he could make a shift with the counting room in the mill, which he occupied, and declared that it answered his purposes very well, and that there was no occasion to build the dwelling house until it suited the convenience of G. Held, that the construction of the agreement is a matter of law to be determined by the court. That parol evidence may be admitted to explain doubtful parts; but no evidence can be admitted to prove the agreement different, or to prove any additional agreement not included in or touched upon in the agreement. That the evidence offered did not do ve or extinguish the contract, or bar the plaintiff's cause of action against the defendant for the breach in not building the house; that it was only a consent to a temporary suspension of the building of the dwelling-house, and is only proper in mitigation of damages.

Held also, that at the time of bringing the action, the plaintiff had a cause of action, being deprived of the benefits under the contract.

Held also, that the covenant on the part of the defendant, that the plaintiff should receive one half of the profits of the mill, is an independent covenant; and that it was not incumbent on the plaintiff, to entitle himself to a recovery, to prove a compliance with or fulfilment of every stipulation in the covenant on his part to be performed.

Held also, that it was not necessary for the plaintiff, in order to support his action, to prove that he took up his residence at the mill, and superintended the same as miller, and devoted his time and attention to the mill, in such manner as is usual for men under wages to do particular work; that he kept a regular set of books, in which were contained all the transactions of the copartnership, and that he effected a settlement of the partnership accounts at the end of the year 1798, or that he was prevented from doing so by the defendant. That it was only necessary for the plaintiff to prove that he did enter upon the management and superintendance of the mill according to the covenant, and did work and manage the same.

Held also, that for withholding from the plaintiff the one half of the profits of the mill, he could only recover therefor from the time when such withholding of the profits first commenced down to the time when the action was brought.

Held also, that the plaintiff might recover damages for one half of the nett profits of the mill down to the time of bringing the action only; and damages for the ejecting and turning him out of the possession of of the mill, and for all advantages and benefits which might attend or result from the possession thereof, during the unexpired term of ten years, not comprehended within the nett profits of the mill; and that an action or actions may be brought by the plaintiff against the defendant, for one half of the nett profits which might have been made, or may be made from working the mill under the contract, from the 11th of February 1799, during the continuance of the partnership under the same.

Held also, that this being an action founded on contract, the plaintiff had on y a right to recover damages for the actual loss, injury and inconvenience, by him sustained by occasion of the breaches of covenant assigned by him, (exclusive of his part of the profits of the mill,) according to the whole of the circumstances existing in the case, without reference to the force, if any, with which the plaintiff was dispossessed.

Held also, that it was no ground to arrest the judgment upon the verdict, (which was for the plaintiff,) because the declaration stated, as a breach on the part of the defendant, the not enclosing the 2 acres of land, &c.

1809.

Morrison
vs
Galloway

cute the said building. Be it remembered, that the parties aforesaid have agreed, and by these presents do agree, each with the other, that they will respectively do and perform the following engagement, agreeable to the plain intent and meaning thereof; that is to say, it is agreed on the part of said *Galloway*, that he will provide all the necessary materials for erecting and finishing said mill, and deliver them to said *Morrison*, at said mill-seat, in good order, and will also provide for said *Morrison*, and his workmen, meat, drink, washing and lodging, during the time of building said mill; the rafters, joists, studs and braces, to be sawed; the mill-house to be 40 feet by 45 feet, or 45 feet square, as said *Morrison* shall determine; to be two stories high, and an hipped roof; the foundation to be stone work; the superstructure of the mill to be framed work, and weather boarded and shingled; a counting room to be in the mill; and said *Galloway* to find a proper desk for the same; said *Galloway* to provide a framed or hewed logged dwelling-house, 24 by 20 feet, with a brick chimney, at said mill, for said *Morrison* to reside in; said *Galloway* further agrees to furnish, in due time, all articles necessary towards putting said mill in complete motion to do merchant and country work, as said *Morrison* may call on him for them, said *Morrison* taking care always to give said *Galloway* sufficient notice to enable him to provide the same; said *Morrison* agrees, on his part, that he will hew the timber, frame the mill-house as before mentioned, weather board it, and shingle the roof; make doors, windows and stairs; make two water wheels; start three pair of burr stones, four bolting cloths, rolling screen and fan, and make hoisting geers within and without, and boulting chest. *Item.* Said *Morrison* engages to complete the above work, after the proper foundation walls are built, for the sum of £450 current money. *Item.* It is agreed on the part of said *Morrison*, that he will take up his residence at said mill, in the dwelling-house aforesaid, and will act as the manager and superintendant of said mill, which is to be worked for the joint benefit and advantage of said *Morrison* and *Galloway*, in equal parts; that is to say, said *Morrison* to receive one half of the nett profits, and said *Galloway* the other half; said *Morrison* to engage the necessary persons to be employed in working said mill, and to remove them whenever he thinks proper; the money capital

for the use of said copartnership to be provided in equal proportions by said parties. It is further agreed, that this copartnership shall commence as soon as the mill shall be ready to do work, and shall continue between the parties aforesaid for the space of ten years; but it is understood, that in case of the death of said *Morrison* before the end of said ten years, then this copartnership is to be dissolved immediately after such event shall take place. It is agreed that a regular set of books shall be kept, which shall contain all the transactions of the copartnership, and a settlement of the partnership accounts shall be effected at the expiration of every year. It is understood between said parties, that said *Morrison* shall never claim any wages for his management and superintendance of said mill, and the said business; nor shall said *Galloway* ever charge said *Morrison* with any rent for the use of the said mill; but that the one shall always be considered as a full satisfaction for the other; the firewood shall be furnished from the farm on which said *Galloway* now resides, for the use of two fire places in said mill and dwelling house, at the equal cost of the said parties for cutting and hauling it to said houses; and 12 acres of land, including two acres of bottom land most convenient to said *Morrison*, to be put under good and sufficient fence for his use. The hogs that may be supported by the sweepings and offals of said mill shall be considered as the joint property of the parties aforesaid; and the said *Galloway* is to employ, at his expense, a person to get the shingles to cover said mill and dwelling-house. In testimony whereof the parties aforesaid have hereto set their hands, and affixed their seals, the day——.Said *Galloway* agrees to pay to said *Morrison* such money as he shall require during the time he is engaged in the building of said mill, and the balance of his account at the time of completing the same." It was signed and sealed by the parties. The declaration alleged, that although the plaintiff had well and truly done every thing on his part to be done, according to the form and effect of the covenant, and did well and faithfully complete the mill on the 21st day of June 1798; and although he was always willing and ready to take up his residence at the mill, in the dwelling house mentioned in the articles of agreement, and offered so to do; and although he was ready and willing at all times to act as the manager and superintendant of the mill,

and offered so to do; and he was always ready and willing
to keep a set of books to contain the transactions of the co-
partnership, and that a settlement of the partnership ac-
counts should be effected at the expiration of each year—
Yet the defendant did afterwards to wit, on the.31st day of
January 1799, at, &c. forcibly, and against the consent of
the plaintiff, eject and turn him from the mill and premi-
ses, and always hitherto hath, and still doth, keep him from
the same; nor did the defendant provide a framed or hewed
logged dwelling house, 24 by 20 feet, with a brick chimney,
at the mill, for the plaintiff to reside in, according to the co-
venant; but the defendant afterwards, &c. after the mill was
complete, and put into complete motion, did prevent the
plaintiff from receiving one half of the nett profits of the
mill; but the defendant did, contrary to the consent of the
plaintiff, receive the whole profits for a long space of time,
to wit, from, &c. until the day of the impetration of the ori-
ginal writ in this cause, and hath refused to pay or deli-
ver any part to the plaintiff, although often requested so to
do. And the plaintiff in fact avers, that the one half of
the nett profits of the mill, for the time aforesaid, was and
still is of the value of £2000 current money, to wit, &c. of
which the defendant had notice. Nor did the defendant
furnish the plaintiff with 12 acres of land, including two
acres of bottom land most convenient to the plaintiff, under
good and sufficient fence, for the plaintiff's use, but wholly
refused, and still doth refuse, to furnish the land, or any
part thereof, as by the articles of agreement he was bound
to do; and so the plaintiff saith that the defendant hath not
performed, fulfilled, kept and observed, the covenant be-
tween them made, but has broken the same; and hath hi-
therto wholly refused, and still doth refuse, to perform it to
the plaintiff; wherefore the plaintiff saith he is injured, and
hath sustained damage to the value of £5000 current money,
&c. It was agreed between the counsel, to enter a gene-
ral plea or performance of all the covenants, and take is-
sue thereon, with leave to the defendant to give any thing
in evidence which he might have pleaded in bar; and that
all errors should be released except, substantial errors in
the declaration.

1. At the trial in the general court at May term 1803,
*Dennis Davis,* a witness, proved, that in the summer 1797
he received orders from the defendant to build the dwel-

ling-house in the declaration mentioned, and to take the slaves of the defendant to get and prepare the logs for that purpose, and to put them up. This direction was communicated to him by letter, the defendant being then absent from home at *Bath*, in *Virginia*. That he, the witness, was at that time at work with the slaves of the defendant upon the dam for the mill. That the witness being about to execute the above orders of the defendant, told the plaintiff that he was about to take away the hands of the defendant from the dam; the plaintiff asked for what, he told him to build his house; the plaintiff told him to continue to work at the dam, and not to mind the house, that he, the plaintiff, could make a shift with the counting room finished in the mill; that in consequence of this request of the plaintiff, he at that time refrained from building the house, and continued working upon the dam until the cold weather prevented him; that he began again to work upon it in the spring 1798, and did not finish it until some short time before the mill was completed, which was on the 21st of June 1798. That the witness was the overseer of the defendant for the years 1797, 1798, 1799. That he never after received any instructions from the defendant to get the logs for the house, and that none were ever got. That at this time the plaintiff was a single man, and that the room in the mill was a large comfortable room, with a fire-place in it. The defendant then proved, that after the mill was completed, the plaintiff occupied the room in the mill, and in conversation with *Peregrine Fitzhugh*, declared to him that the room answered his purposes very well, and that there was no occasion to build the dwelling-house until it suited the convenience of the defendant. The plaintiff offered no evidence to the jury that he ever called upon the defendant to build the dwelling-house, or requested it to be done. That on the 31st of January 1799, the defendant dispossessed the plaintiff of the mill, and kept him out ever after. On these facts the defendant prayed the court to direct the jury, that the plaintiff had no cause of action against him for the alleged breach of covenant in not building the dwelling-house.

*Mason* and *J. Buchanan*, for the Defendant, cited *Jones vs. Barkley*, 2 *Dougl.* 684, 687; and 1 *Roll. Ab.* 453, N. pl. 5.

1809.

Morrison
vs
Galloway

*Martin*, (Attorney-General,) for the Plaintiff, cited *Lit-tler vs. Holland*, 3 *T. R.* 590.

CHASE, Ch. J. The construction of the agreement is a matter of law to be determined by the court. Evidence may be admitted to explain doubtful parts; but no evidence can be admitted to prove the agreement different, or to prove any additional agreement not included in, or touched upon in the agreement.

The court cannot give the direction prayed by the defendant. They are of opinion, that the evidence offered did not dissolve or extinguish the contract in this case, nor bar the plaintiff's cause or right of action, against the defendant, for the breach in not building the house; that it was only a consent to a temporary suspension of the building of the dwelling-house, and is only proper in mitigation of damages. The defendant excepted.

2. It appeared in evidence, that the mill was completed on the 21st of June 1798, and continued in the possession, and under the direction of the plaintiff exclusively, until the 31st of January 1799. That on this last day the defendant dispossessed the plaintiff, and from that time only, withheld from him any share of the profits. That on the 11th of February 1799, the plaintiff instituted this his suit against the defendant. The defendant then moved the court to direct the jury, that when this suit was instituted the plaintiff had no cause of action against the defendant for withholding the profits of the mill.

CHASE, Ch. J. At the time of bringing the suit, the plaintiff had a cause of action, being deprived of the benefits under the contract. The court cannot give the direction prayed. The defendant excepted.

3. The defendant then moved the court to direct the jury, that the covenant on the part of the defendant, that the plaintiff should receive one half of the profits of the mill, is dependent on the covenant, on the part of the plaintiff, to take up his residence at the mill, to superintend its management and direction for the joint benefit and advantage of both parties, to commence a copartnership as soon as the mill should be put in motion, and to keep a regular set of books containing all the transactions of the partnership concern; and that the plaintiff, to entitle himself to a

recovery of one half of the profits of the mill, must prove that he performed his covenant in all its parts, or that he was prevented from doing so by the defendant.

*J. Buchanan* and *Warfield*, for the Defendant, cited *Jones vs. Barkley*, *Dougl.* 684, 690, *Esp. Dig.* 284, 285; and *Glazebrook vs. Woodrow*, 8 *T. R.* 366.

CHASE, Ch. J. The court are of opinion, that the covenant in this case is an independent covenant, and that it is not incumbent on the plaintiff, to entitle himself to a recovery, to prove a compliance with, or fulfilment of, every stipulation in the covenant on his part to be performed. The court therefore refuse to give the direction prayed. The defendant excepted.

4. Upon the rejection of the testimony of the subscribing witness to the agreement as to the ideas of the parties respecting the agreement, and upon the statement in the second bill of exceptions, the defendant prayed the court for their opinion and direction to the jury, that by the true construction of the articles of agreement, the plaintiff was bound to take up his residence at the mill, and superintend the same as miller, and to devote his time and attention to the mill, in such manner as is usual for men under wages to do particular work. That the plaintiff was bound to keep, and prove that he kept, a regular set of books, in which should be contained all the transactions of the copartnership, and that he was bound to effect a settlement of the partnership accounts at the expiration of the year 1798; and that unless he does show that he has done this, or that he was prevented from doing so by the defendant, he cannot sustain an action against the defendant upon this covenant, for dispossessing him of the mill on the 31st of January 1799, and depriving him of the share of its profits from that time.

CHASE, Ch. J. The court cannot give the direction prayed. They are of opinion, that it is not necessary for the plaintiff to prove any of the facts above specified, to support this action, except that he did enter upon the management and superintendence of the mill, according to the covenant, and did work and manage the same. The defendant excepted.

1809

Morrison
vs
Galloway

5. The defendant then prayed the court for their direction to the jury, that if they should be of opinion that the plaintiff was entitled to recover from the defendant, for his withholding from the plaintiff the one half of the profits of the mill, that he could only recover therefor from the time when such withholding of the profits first commenced, down to the time when this suit was brought.

THE COURT gave the direction accordingly.

6. The defendant then prayed the opinion of the court, and their direction to the jury, that for the breach stated by the plaintiff, in turning him out of the mill on the 31st of January 1799, and keeping him out thereafter, he can only recover damages for the actual deprivation of his possession, and the continuance of that deprivation down to the bringing of the suit, and not further; and that for all the subsequent damages which the plaintiff hath sustained for being deprived of the possession and profits of the mill, subsequent to the bringing of this suit, he may have a new action against the defendant, if in doing so the defendant has acted contrary to law.

*Mason* and *Warfield*, for the Defendant, cited 3 *Blk.* *Com.* 157; and 1 *Bac. Ab.* tit *Covenant*, 542, 546.

*Martin*, (Attorney General,) and *Shaaff*, for the Plaintiff, cited *Nurse vs. Barns*, Sir *T. Raym.* 77.

CHASE, Ch. J. The court are of opinion, that the plaintiff may recover damages for one half of the nett profits of the mill down to the time of instituting this suit only; and damages for the ejecting and turning the plaintiff out of the possession of the mill, and for all advantages and benefits, which might attend or result from the possession of the same, during the unexpired term of ten years, not comprehended within the nett profits of the mill; and that an action or actions may be brought by the plaintiff against the defendant, for one half of the nett profits which might have been made, or may be made, from working the mill under the contract, from the 11th of February 1799, during the continuance of the partnership under the same. The plaintiff and defendant *both* excepted to this opinion of the court.

7. The defendant then prayed the court to direct the jury, that in this case the plaintiff had only a right to recover damages for the actual loss, injury and inconvenience, by him sustained by occasion of the breaches of covenant assigned by him; and that this being an action sounding in contract, it was not a case in which it was proper for the jury to give vindictive damages.

CHASE, Ch. J. The court are of opinion, that this being an action founded on contract, the plaintiff has only a right to recover damages for the actual loss, injury and inconvenience, by him sustained by occasion of the breaches of covenant assigned by him, (exclusive of his part of the profits of the mill,) according to the whole of the circumstances existing in the case, as they appear in evidence to the jury, without reference to the force, if any, with which the plaintiff was dispossessed. The plaintiff excepted.

*Verdict* for the Plaintiff, and damages assessed to £168 15 0 current money. There was a motion *in arrest of judgment*, and the following reason was assigned: Because the plaintiff hath stated in the declaration, as a breach of the covenant, on the part of the defendant, that he did not enclose twelve acres of land most convenient to the mill, in the declaration mentioned, two acres whereof was bottom land, and cause the same to be put under a good and sufficient fence for the exclusive use of the plaintiff; upon which pretended breach of covenant the jury have assessed damages to the plaintiff, when in fact it was the duty, by the articles of agreement, of him the plaintiff, and not of the defendant, to have enclosed said twelve acres of ground at the joint expense of the plaintiff and defendant.

*Curia adv. vult.*

Upon the abolition of the General Court, this case was transferred to the county court of *Washington*, in which court, at October term 1806, judgment on the verdict was arrested by *Shriver*, A. J. and the plaintiff appealed to this court.

The cause was argued before CHASE, Ch. J. NICHOLSON, GANTT, and EARLE, J.

*Shaaff*, for the Appellant. This case does not come up on any of the bills of exceptions taken at the trial of the

1809.

Morrison
vs
Galloway

cause. The sole question for this court is, whether the county court were right in arresting judgment on the verdict. The breaches in the declaration, which have been made the ground for the motion in arrest of judgment, as stated in the reasons filed, are, that "the defendant did not enclose twelve acres of land most convenient to the mill, in the declaration mentioned, two acres whereof was bottom land, and cause the same to be put under good and sufficient fence for the exclusive use of the plaintiff." Now the declaration does not allege the breach as stated in the reasons. The breach, as laid in the declaration, is "nor did the defendant furnish the plaintiff with 12 acres of land, including two acres of bottom land, most convenient to the plaintiff, under good and sufficient fence, for the plaintiff's use, but wholly refused," &c. in the words of the agreement. The meaning of which is, that Galloway was to furnish the land enclosed, and that it was not to be at the joint expense of the parties. The preceding clause in the agreement saying, that the firewood, &c. should be at the equal cost of the parties, did not make it a covenant that the 12 acres should be enclosed at the joint expense. They are separate covenants. It is not usual for a man to covenant to furnish himself; and as this was for the benefit of Morrison, it must be Galloway's covenant. The costs of cutting the firewood, &c. has nothing to do with what follows respecting the land to be enclosed. After verdict, the court are to infer from the expressions in the declaration, that Galloway did not, according to the agreement, furnish the land, and enclose it as by the covenant he was bound to do, and that the jury found that he did not furnish and enclose according to the covenant. The declaration does not state at whose expense the enclosing was to be. It was to be done for the use of Morrison. The firewood was to be furnished at the equal expense of the parties.

If the judgment is reversed, by the act of 1800, ch. 69, this court are to give such judgment as the court below ought to have given. The judgment here has been arrested, and if the judgment of arrest is reversed, unless the court give judgment under this act, the appellant has no remedy but a new action.

*T. Buchanan*, for the Appellee. The only question as to the construction of the agreement is, whether the land

was to be enclosed at the joint expense of the parties? The declaration goes upon the ground that the enclosure was to be made solely at *Galloway's* expense, when the agreement does not so provide, but when it may be inferred that it was to be at the joint expense of both, and was to be taken as a mutual covenant. In the agreement, where any act was to be done at the expense of either of the parties, it is so stated. Hence, it not being otherwise provided, the inference is, that the enclosing the 12 acres, &c. was to be at the joint expense of both. The firewood was to be furnished at the joint expense, and the land to be enclosed at the like expense. There is no reason why the expense in the one case should not be borne as in the other. In this case the appellee took a number of bills of exceptions at the trial. He did not let the judgment go against him on the verdict, and rely on the errors in the opinions given in the exceptions, but moved to arrest the judgment, which was done, and the cause is now in this court on the plaintiff's appeal. If the judgment is reversed, and such a judgment given as the court below ought to have entered, the appellee will be precluded from the benefit of his bills of exceptions.

*Martin*, in reply, was stopped by the court.

JUDGMENT REVERSED, AND JUDGMENT FOR THE APPELLANT ON THE VERDICT, &c.

---

SMITH, *et al.* vs. THE STATE.

APPEAL from a decree of the Court of Chancery. Bill filed in the name of the state, at the instance and for the use of *Carroll* and *Maccubbin*.

HANSON, Chancellor, decided, that by the act of October 1780, *ch.* 45, "to seize, confiscate and appropriate, all *British* property within this state," and the act of the same session *ch.* 49, "to appoint commissioners to preserve confiscated *British* property," the *equitable* interests of *British* subjects in lands were confiscated without *office found*; or entry or other act done, and although such equitable interests were not discovered until long after the treaty of peace between *Great Britain* and the *United States*. [See the de-

DECEMBER.

By the acts of confiscation, the equitable interests of *British* subjects, in lands in this state, were confiscated without *office found*, or entry, or other act done, and although such equitable interests were not discovered until long after the treaty of peace.